SIRI & GLIMSTAD LLP
Catherine Ybarra (SBN 283360)
Email: cybarra@sirillp.com
700 S. Flower Street, Suite 1000
Los Angeles, CA 90017
Telephone 213-376-3739
Facsimile 646-417-5967

SIRI & GLIMSTAD LLP
Allison R. Lucas (*pro hac vice filed concurrently*)
Email: alucas@sirillp.com
220 West Congress Street, 2nd Floor
Detroit, MI 48226
Telephone 313-251-9161
Facsimile 646-417-5967

SIRI & GLIMSTAD LLP
Elizabeth A. Brehm (*pro hac vice filed concurrently*)
Email: ebrehm@sirillp.com
745 Fifth Avenue, Suite 500
New York, NY 10151
Telephone 212-532-1091
Facsimile 646-417-5967

Attorneys for Plaintiff
BARBARANN REAM

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| BARBARANN REAM,<br><br>                              Plaintiff,<br><br>v.<br><br>MICHAEL V. DRAKE, in his official capacity as President of the UNIVERSITY OF CALIFORNIA, and DR. DAVID RUBIN, in his official capacity as | Case No.  3:24-cv-00189<br><br>**VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

1

Executive Vice President for University of
California – Health, of the UNIVERSITY
OF CALIFORNIA,

                          Defendants.

## VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

The straightforward legal issue presented is whether the Regents of the University of California, by and through Michael V. Drake, its President, and Dr. David Rubin, the Executive Vice President for University of California Health (collectively, "**Defendants**") can deny continued enrollment to Barbarann Ream ("**Ms. Ream**" or "**Plaintiff**"), who has sincerely held religious convictions against receiving the vaccines required by Defendants, to its online Master of Business Administration ("**MBA**") program, while simultaneously allowing case-by-case secular (medical) exemptions to the vaccination requirements. Because Defendants' vaccination policy violates the United States Constitution, Plaintiff requests declaratory and injunctive relief.

Plaintiff, BARBARANN REAM, for her verified complaint, against MICHAEL V. DRAKE, in his official capacity as President of the University of California, and DR. DAVID RUBIN, the Executive Vice President for University of California - Health, of the UNIVERSITY OF CALIFORNIA by and through her attorneys, alleges as follows:

## INTRODUCTION

1.     The University of California ("**UC**") requires certain vaccinations for incoming students prior to enrollment or registration. Exhibit 1 (University of California Davis Immunization Requirements). This requirement (hereinafter the "**Policy**") applies to Ms. Ream even though she has enrolled in an online program. Based on Ms. Ream's age, UC requires her to receive one dose of Tdap, two doses of MMR, and two doses of Varicella (chicken pox) (collectively, the "**required vaccines**"). *Id.*

2.      The UC Immunization Exemption Policy permits exemptions from the required vaccines for secular (medical) reasons yet prohibits exemptions for religious reasons: "Requests for exemptions for non-medical reasons will be denied and are not eligible for appeal." Exhibit 2 (University of California—Policy UC-HS-17-0320) at 8); Exhibit 3 (University of California Immunization Exemption Policy) at 1.

3.      Medical exemption requests to the Policy are reviewed on an individualized, discretionary, case-by-case basis.

4.      Multiple layers of personalized and individualized review of medical exemption requests are performed. At each level, UC representatives possess discretion to approve or deny each medical exemption request.

5.      However, Defendants have made a categorical decision that no commensurate process shall be allowed for those desiring to be exempt from the Policy for religious reasons.

6.      On belief, pursuant to its medical exemption policy, UC has granted medical exemptions to the required vaccines. On belief, there are students with medical exemptions who are not part of online programs and these in-person students pose an infinitely greater risk to Defendants' infectious disease-related goals than permitting Plaintiff, an online student, the option to pursue a religious exemption to the Policy.

7.      Moreover, on belief and pursuant to its medical exemption policy Defendants have granted secular exemption requests to the Policy but refuses a single online student to even request a religious exemption to same.

8.      The aggregation of individual behaviors Defendants permit—medical exemptions, students who are permitted to attend classes while out of compliance with the Policy, professors and staff who are not subject to the Policy, and the general public who have not received vaccines required under the Policy but who regularly intermingle on Defendants' campuses—pose a dramatically greater risk to Defendants' goals than would permitting Plaintiff a process to pursue a religious exemption.

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

9.     Further, the aggregation of individual behaviors Defendants permit, outlined immediately above, pose a significantly greater risk to Defendants' goals than would permitting a religious exemption option to the Policy to all students and potential students in Defendants' educational programs.

10.     Ms. Ream matriculated as an online MBA student at the University of California, Davis ("**UCD**") on September 27, 2023, when she attended her first online MBA course.

11.     When Ms. Ream enrolled and participated in the UCD MBA program, she was out of compliance with the Policy. On belief, Defendants permit many other students who are out of compliance with the Policy to enroll and attend classes on campuses.

12.     For example, From September 30 to October 1, 2023, Ms. Ream attended two days of required in-person instruction at UCD and Ms. Ream has completed her first term.

13.     Near the end of her first term, on December 6, 2023, Ms. Ream submitted a request for religious accommodation to the Policy that included a seven-page letter detailing her upbringing in the Christian Science Faith, her later incorporation of Sufi Muslim tenets into her religious beliefs and practices, and her objections to receiving the required vaccines. Ms. Ream's submission outlined that her objections to vaccination are central to her faith practices and demonstrate her sincerely held religious beliefs. In short, Ms. Ream's religious beliefs are substantially burdened by the Policy, which explicitly prohibits religious exemptions and denies an education to unvaccinated religious citizens but permits citizens unvaccinated for secular reasons to access the benefits of an education at UC.

14.     Ms. Ream's request was denied by UC because it has made an unconstitutional value judgment that religious reasons for opting out of the Policy are prohibited, but that secular reasons for opting out of the Policy are welcomed.

15. Based exclusively on her religious beliefs that preclude vaccination, Defendants placed a registration hold on Ms. Ream's account that prevents her from registering for any additional classes.

16. Prohibiting one exemption (religious) while permitting another (medical) is confirmation that the exclusion of students with religious beliefs against vaccination is not the result of an absolute priority to ensure every single student is vaccinated.

17. The fact that Ms. Ream is ineligible to complete the UCD MBA program is not an incidental consequence of a neutral, generally applicable policy.

18. Defendants' "no religious exemptions" policy runs afoul of numerous United States Supreme Court and federal court decisions. *See Employment Div., Dep't of Human Resources of Ore v. Smith*, 494 U.S. 872 (1990); *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993); *Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*, 138 S. Ct. 1719 (2018); *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020); *Tandon v. Newsom*, 141 S. Ct. 1294 (2021); and *Fulton v. City of Philadelphia*, 141 S. Ct. 1868 (2021); *see also Bosarge v. Edney, et al.*, 1:22-cv-233-HSO-BWR (S.D. Miss. Apr. 18, 2023); and *Fraternal Order of Police v. Newark*, 170 F.3d 359 (3d Cir. 1999).

19. Undermining any goals Defendants may have in requiring vaccinations— **even for online students such as this Plaintiff**—is the fact that, other than placing a registration hold on student accounts, Defendants do not otherwise intrude into the lives of unvaccinated students, staff, and others who have in-person contact on campus. For example, Defendants do not require proof of vaccination from those attending sporting events or accessing the campus, including the library, dorms, aquatics center, etc. Additionally, summer guests residing in campus housing have no vaccine requirement. *See* Exhibit 5 (UC Davis Conference Housing, University & Residence Hall Regulations for Conference Housing Guides) (citing no vaccines requirements).

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

20.     Furthermore, even if Defendants require vaccines for employees (and it is unclear whether they do), they are required to provide reasonable accommodation for their employees who have religious objections to vaccination pursuant to Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000 *et seq*.) and the California Fair Employment and Housing Act (Cal. Gov. Code § 12900, *et seq*.)

21.     Defendants' refusal to provide Ms. Ream a religious exemption option when they readily provide discretionary secular medical exemptions is unconstitutional under the First Amendment's Free Exercise Clause. The Supreme Court in *Fulton*, 141 S. Ct. 1868 made clear that where the government provides discretionary secular exemptions to a policy, the First Amendment demands that it also provide a process to pursue a religious exemption.

22.     Moreover, UC permits comparable secular activities (from a risk perspective), while religious exemptions are forbidden, which fatally undermines the neutrality and general applicability of the Policy under *Tandon*, 141 S. Ct. at 1296.

23.     Ms. Ream asserts, in her as applied challenge to the Policy, that the Policy's specific application to her situation violations the First Amendment.

24.     Defendants' actions have deprived and will continue to deprive Plaintiff of her inalienable rights under the United States Constitution.

25.     Defendants' actions have irreparably harmed and will continue to irreparably harm Plaintiff.

26.     Defendants committed each act alleged herein under the color and authority of California law.

## PARTIES

27.   Plaintiff, BARBARANN REAM resides in Los Angeles County, California, who was permitted to, and matriculated in the online MBA program at UCD.

28.     Defendant MICHAEL V. DRAKE is the president of the University of California and acted under color of law at all times relevant hereto. Mr. Drake is

6

responsible for the implementation and enforcement of the challenged Policy and has directed, implemented, and enforced the Policy against citizens whose religious beliefs preclude vaccination, and is sued in his official capacity for prospective declaratory and injunctive relief.

29.     Defendant DR. DAVID RUBIN is the Executive Vice President for University of California Health and is the designated responsible official for the implementation of the challenged Policy, including at UCD, and is sued in his official capacity for prospective declaratory and injunctive relief. Mr. Drake and Dr. Rubin are hereinafter referred to collectively as "Defendants."

30.     Defendants are responsible for enforcing, have enforced, and will continue to enforce in the future, the challenged Policy against Plaintiff, unless enjoined.

## JURISDICTION AND VENUE

31.     This Court has subject-matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343(a).

32.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this action occurred in this judicial district. Specifically, this action involves the Plaintiff's threatened disenrollment from an online MBA program, and (i) the Plaintiff enrolled in that program from her home in this judicial district and division; (ii) the Plaintiff directed tuition payments from this judicial district and division to Defendants, and her banking is located in this judicial district and division; (iii) the Defendants, by and through their course instruction, communicated such instruction to the Plaintiff, who was located in this district and division for her course work, and directed such instruction into this judicial district and division; (iv) the Plaintiff conducted her course work in this judicial district and division; (v) the Plaintiff communicated her request for a religious accommodation from this judicial district and division, which Defendants, through their authorized agents, responded to the Plaintiff denying that accommodation request, and

7

directed such communications regarding the denial to this judicial district and division; and (vi) the coercion and punishment of the Plaintiff for her religious beliefs were directed to this judicial district and division.

## **FACTUAL BACKGROUND**

**I.    PLAINTIFF'S ENROLLMENT AND DETAILS OF HER MBA PROGRAM**

33.    Plaintiff enrolled in the fall of 2023 in an online MBA program. The course requires between 18 months and 4 years to complete, depending on the number of credits that a student takes per semester.

34.    Students are permitted to enroll and take a semester of credits without complying with the Policy, and can pursue a medical exemption to the Policy during that semester.

35.    In the same vein, the entirety of the substantive graded course work is completed online, from the student's personal residence (or anywhere else the student may elect to receive such course instruction).

36.    However, the MBA program requires two residency sessions, which are completed over a period of two days each, for a total period of four days. These residency sessions involve touring outside facilities and interactions with guest speakers.

37.    For instance, in the fall semester of 2023, when Plaintiff attended the first of these sessions, she and the remaining students in the MBA program, toured a facility, a winery, and an almond facility. None of these facilities required employees or guests to be vaccinated. In a similar vein, guest speakers, who were leaders in the business community, came and spoke and interacted with the students. These speakers were similarly not required to be vaccinated.

38.    These residency sessions are not graded with a letter grade, but instead are completed on a "pass/fail" basis.

39.     For graded coursework, that Ms. Ream took her first semester, her grades were exemplary, and exceeded a 3.7 Grade Point Average.

40.     Plaintiff could complete the entirety of the graded course work without being on campus, other than the second residency session. Plaintiff, if permitted to take course work, could complete the next year of required instructional study, and do so solely online.

## II.    UNIVERSITY OF CALIFORNIA VACCINATION POLICY

### A.    Defendants' Categorical "No Religious Exemption Policy"

41.     Upon belief, UC permitted religious exemptions to its vaccine requirements prior to 2016. However, in the summer of 2015, UC assembled the Immunization Exemption Policy Committee ("**IEPC**"), which recommended that UC eliminate religious exemptions. UC adopted this recommendation in the fall term of 2016. Ex. 2, p. 8.

42.     Defendants proport that its interest in promulgating the Policy is to mitigate the risk of students contracting vaccine-preventable illnesses that could be acquired in a UC facility and that the "diseases targeted by this Policy include those that are spread by respiratory transmission, and therefore can pose risk to others attending classes, living in residence halls, using other University facilities or attending University events." Ex. 2, p. 1.

43.     Defendants' Policy requires that Ms. Ream receive two measles, mumps, and rubella ("**MMR**") vaccines, two varicella (chicken pox) vaccines, and one tetanus, diphtheria, and acellular pertussis ("**Tdap**") vaccine to continue in the online MBA program. Ex. 1. This totals eleven doses of three vaccines, given in five injections.

44.     As noted above, the Policy permits medical exemptions for the required vaccines. These secular exemptions are reviewed on a case-by-case individualized basis, and UC representatives reviewing medical exemption requests possess significant discretion to approve or deny each request.

45.    However, no commensurate exemption process is available to those with religious objections to the Policy. Defendants' Policy makes clear that "[n]o exceptions for entrance immunizations are provided on the basis of personal or religious beliefs. Only medical exemptions are allowed." *See* https://shcs.ucdavis.edu/new-students (under the Personal/Religious Beliefs Exceptions tab).

46.    Defendants' Policy purports to pertain "to those vaccine-preventable illnesses that can be spread by respiratory secretions (saliva, coughing, sneezing), and pose a risk to others who might become ill due to classroom or residential contact."[1] Exhibit 4 (UC Immunization Plan Policy: Frequently Asked Questions) at 1.

---

[1] The tetanus, diphtheria, and pertussis vaccine (Tdap) does not prevent infection or transmission of the diseases it targets. This vaccine merely provides a level of personal protection by preventing a recipient from experiencing the symptoms of these infections, which Plaintiff gladly declines in favor of continuing to uphold her lifelong religious beliefs. *See, e.g.*, https://pubmed.ncbi.nlm.nih.gov/31333640/ ("Natural infection evokes both mucosal and systemic immune responses, while aPVs [acellular pertussis vaccine, the exclusive pertussis vaccine used in the United States] induce only a systemic immune response. … Mucosal immunity is essential to prevent colonization and transmission of B. pertussis organisms. Consequently, preventive measures such as aPVs that do not induce a valid mucosal response can prevent disease but cannot avoid infection and transmission. … aPV pertussis vaccines do not prevent colonization. As such, they do not reduce the circulation of B. pertussis and do not exert any herd immunity effect."); likewise, the tetanus vaccine does not prevent infection and transmission of the targeted pathogen. *See* https://www.cdc.gov/vaccines/pubs/pinkbook/tetanus.html ("Tetanus is not contagious from person to person."); the same is true of the diphtheria vaccine. *See* https://pubmed.ncbi.nlm.nih.gov/5026197/ (Diphtheria vaccine only creates antibodies to a toxin released by the diphtheria bacteria and does not generate any antibodies to the diphtheria bacteria itself, hence "Diphtheria toxoid helps prevent symptomatic disease but does not prevent the carrier state nor stop the spread of infection."). In addition, the varicella vaccine is a live virus vaccine, meaning there is, albeit modified, live chicken pox virus in each dose. Those vaccinated with this live virus can infect others with the chicken pox virus for up to six weeks after receipt of the live vaccine. This is why its package insert, approved by FDA, explains "that transmission of varicella vaccine virus (Oka/Merck) resulting in varicella infection including disseminated disease may occur between vaccine recipients (who develop or do not develop a varicella-like rash) and contacts susceptible to varicella including

---

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

47.     Considered in context, Defendants' justifications for the Policy are nonsensical. While Defendants "require" COVID-19 and influenza vaccines, students are permitted to opt out of receiving these vaccines for any reason whatsoever, including secular reasons, personal preference, or no reason at all. Students do not have to provide a reason to opt out.

48.     COVID-19 and influenza are illnesses spread by respiratory secretions and are potentially contagious in a classroom or residential setting. Worse, those illnesses are both highly transmissible with (from a comparison perspective) more serious illness and death, than those illnesses contained in Defendants' Policy for which vaccination is required.

49.     Thus, Defendants' Policy prohibits Ms. Ream, an **online** MBA student, from receiving a religious accommodation to vaccines for diseases that in general cause mild illness, and one of which (Tdap) does not stop infection or transmission of the targeted pathogens. Again, Defendants permit **on-campus** students to opt out of COVID-19 and influenza vaccines.

**B.     Defendants' Discretionary Medical Exemption Scheme**

50.     As noted above, Defendants' discretionary medical exemption scheme permits a medical exemption option for any required vaccine. Ex. 3.

51.     The medical exemption scheme contains multiple levels of individualized discretionary review.

---

healthy as well as high-risk individuals" and that "[d]ue to concern for transmission of vaccine virus, vaccine recipients should attempt to avoid whenever possible close association with susceptible high-risk individuals for up to six weeks following vaccination" including "[i]mmunocomposed individuals [and] [p]reganant women … [and] [n]ewborn infants of mothers without documented history of varicella." https://www.fda.gov/media/76008/download?attachment. Nonetheless, Defendants do not exclude those vaccinated with this product from UC for six weeks after vaccination.

52.    At the first level, Defendants have delegated private health care providers discretion to determine what broad variety of circumstances they consider eligible for a medical exemption, and which they do not.

53.    Students seeking a medical exemption must have a healthcare professional—a medical doctor (M.D. or D.O.), physician assistant, or nurse practitioner—complete Defendants' Medical Exemption Request Form, which lists three options for obtaining the exemption. Exhibit 6 (University of California Medical Exemption Request Form) at 1.

54.    The three options are: "(a) the applicable CDC contraindication to this vaccine, or (b) the applicable manufacturer's vaccine insert contraindication to this vaccine, or (c) the physical condition of the person or medical circumstances relating to the person that are such that immunization is not considered safe, indicating the specific nature of the medical condition or circumstances that contraindicate immunization with this vaccine." Ex. 6 at 1. There is then space provided for the health professional to describe the contraindication(s).

55.    At the second level of Defendants' discretionary process, the medical exemption is reviewed on an individual basis by the local Medical Director for Student Health Services at the student's campus. If the Health Director believes the information provided in the request does not meet the requirements of the Policy or is ambiguous or insufficient, the Health Director possesses discretion to deny the request. *Id.*

56.    At the third level of discretionary review, if the medical exemption request is denied, the student can appeal the denial to a committee to "evaluate medical exemption request denied at the campus level." *Id.*

57.    The panel possesses latitude to uphold or overturn the medical exemption denial.

58.    The appeal process can take up to 60 days and the unvaccinated student is permitted to remain enrolled in classes and register for the upcoming academic term in

12

which the appeal is received. *Id*. Even if the denial is upheld by the committee, the student is permitted to remain in class until the completion of the term. *Id*.

59.     Critically, if an outbreak of a vaccine-preventable illness occurs on campus, unvaccinated students with a medical exemption are not subject to an automatic exclusion because each case is determined on a case-by-case basis. *Id*.

60.     In sum, Defendants dictate what circumstances to consider when evaluating whether a student possesses a qualifying condition for a medical exemption. Defendants require a specific form that must be completed by healthcare professionals. The healthcare professionals are instructed to refer to guidance issued by vaccine manufacturers and the CDC for valid exemption conditions, which guidance itself is in multiple instances amorphous, ambiguous, and at bottom subjective. Healthcare professionals can also use their discretion to conclude that the physical condition or the medical circumstances relating to the patient renders vaccination unsafe. Through the Medical Exemption Form, Defendants use their discretion to determine what circumstances qualify for a medical exemption and, by omission, which circumstances do not.

61.     Defendants have determined that medical exemptions are appropriate and have implemented a discretionary review process by which students who seek medical exemptions may have their individual situations reviewed and either approved or denied on an individual and granular level.

62.     A similar exemption process is wholly unavailable to students with religious objections to the Policy.

**C.    Defendants Permit Comparable Secular Activity**

63.     On belief, since instituting the Policy, Defendants have granted medical exemptions to each of the diseases that general opt outs are not provided for and have provided a number of generalized opt outs for a variety of reasons for COVID-19 and influenza vaccinations pursuant to its policies.

64.     On belief, Defendants have granted medical exemptions to students who attend classes in-person and who interact with other students and staff significantly more frequently (indeed, every day of classroom instruction, year-round) than Plaintiff would as an online MBA student (four days to complete the MBA program).

65.     From a risk perspective, one **online student** with a medical exemption to the Policy poses the same risk to Defendants' goals as allowing Plaintiff a religious exemption – which is to say virtually no risk at all.

66.     From a risk perspective, one **in-person student** with a medical exemption to the Policy poses a **much greater risk** to Defendants' goals than allowing Plaintiff a mechanism to pursue a religious exemption.

67.     On belief, Defendants do not strictly enforce the Policy and permit functional exemptions through non-enforcement of the Policy. In other words, Defendants permit students lacking one or more of the required vaccines to attend class, even though they are non-compliant with the Policy.

68.     On belief, Defendants also permit faculty and staff who may not be fully up to date with the required vaccines to roam freely throughout its campuses, without adhering to enhanced safety protocols.

69.     Defendants have students enrolled in the MBA program tour large facilities including interactions with a large number of employees employed at such facilities, all of whom are not required to be vaccinated, such as the winery and almond facilities toured in the fall of 2023 by the Plaintiff and her classmates.

70.     In the same way, Defendants have students enrolled in the MBA program interact with guest speakers who are not required to be vaccinated, such as the interactions that occurred in the fall of 2023 with such speakers by the Plaintiff and her classmates.

71.     Defendants also permit the public, including countless numbers of California citizens who remain unvaccinated or partially unvaccinated for any reason

14

they choose, including secular reasons, to access Defendants' facilities without showing proof of vaccination.

72.     Critically, Defendants permit unvaccinated members of the public to attend high transmissibility events in which there are large crowds gathered in close proximity, such as UC basketball and football games, without showing proof of vaccination.

73.     However, Defendants prohibit Plaintiff from receiving an education based on her religious objections to the Policy.

74.     A single unvaccinated person or student on UC campuses poses the same or greater risk to Defendants' goals as permitting Plaintiff to access an online education at UC.

75.     Collectively, the aggregation of individual secular behaviors Defendants permit (e.g., medical exemptions, unvaccinated faculty and staff, lax enforcement of the Policy, and unvaccinated members of the general public accessing UC facilities unprohibited) pose an infinitely greater threat to any possible goals undergirding the Policy than permitting Plaintiff—an online student—to access the State's educational benefits with a religious exemption to the Policy.

### III.    PLAINTIFF HAS SINCERELY HELD RELIGIOUS CONVICTIONS THAT PREVENT HER FROM RECEIVING THE REQUIRED VACCINES

76.     Ms. Ream was born into the Christian Science church, and her mother was a practitioner of the faith. Her parents submitted a religious exemption for her in 1978 to avoid childhood vaccines. Throughout her life, Ms. Ream has experienced examples of healing and a divine presence. In 2000, as Ms. Ream grew older and her faith and convictions matured, she began to incorporate Sufi Islamic principles into her religious beliefs and practices.

77.     Ms. Ream graduated from a three-year Islamic/Sufi spiritual healing program and became a practitioner in 2005.

15

78.    Ms. Ream believes in an ever-present, all-knowing, and all-powerful God. She considers the body sacred because of her concern for God's creation and she views the body as a reflection of her spiritual state. As part of her religious practices, she engages in numerous activities, including but not limited to prayer and study of the Bible and Quran, meditation, chants, attending mosque, Wudu, spiritual fasts, introspection, yoga, and tithing, on a regular and systemic basis.

79.    Ms. Ream's faith informs all aspects of her life, including medical choices. Ms. Ream examines the intention behind taking in any substance, because having the correct intention is critical to her faith. Because of her religious convictions, Ms. Ream objected to the Policy and provided Defendants with a detailed statement outlining her religious beliefs and objections to receiving the required vaccines.

80.    Receiving the required vaccines is not compatible with Ms. Ream's faith for a multitude of reasons which Ms. Ream shared with Defendants when seeking her exemption (despite the fact that Ms. Ream holds confidential most of her religious beliefs and practices). Each of her beliefs outlined in her exemption request are independent and each alone prohibit Ms. Ream from receiving the vaccines required under the Policy.

**A.    Defendants Attempt to Compel Ms. Ream to Violate Her Beliefs**

81.    On September 27, 2023, Ms. Ream matriculated as an online MBA student and began online courses. Attending two in-person/residence sessions for the program is required by the MBA program.

82.    From September 30 to October 1, 2023, Ms. Ream attended her first of two, two-day in-person/residence sessions. As a result, she is only required to spend two additional days on campus to complete all course requirements for her MBA.

83.    During this time, Ms. Ream attended lectures on campus, interacted with students and professors, and travelled on a bus and ate dinner off-campus with her fellow

MBA students. At no point during this in-person session was her vaccination status required or questioned by Defendants.

84.    Nonetheless, Defendants placed a registration hold on Ms. Ream's account on November 1, 2023, because of her religious practices that preclude vaccination.

85.    On December 6, 2023, Ms. Ream submitted a request for religious exemption and accommodation to Defendants' vaccine policy that included a seven-page letter detailing her upbringing in the Christian Science Faith, her later incorporation of Sufi Muslim tenets into her religious beliefs and practices, and her specific and genuine objections to receiving the required vaccines. As part of her request, Ms. Ream submitted six separate and independent objections to receiving these vaccines, any one of which standing alone would entitle her to a religious exemption under the First Amendment to the United States Constitution.

86.    On December 12, 2023, Ms. Ream's request for religious accommodation was denied by Defendants. Ms. Ream's request was denied because religious exemptions are categorically not permitted under the Policy, regardless of the reasons, justifications, or circumstances.

87.    The only in-person requirement remaining under her MBA program is the second two-day session of in-person/residence instruction. And, as noted, she can complete the next year of instruction without completing that program requirement.

88.    Ms. Ream would not attend any in-person event on Defendants' campuses, including the two required under her online MBA program, if she had symptoms consistent with any of the following diseases: measles, mumps, rubella, varicella (chicken pox), diphtheria, or acellular pertussis.

89.    In order to accommodate Defendants' justifications underlying its Policy, Ms. Ream would not attend any in-person events on Defendants' campuses if she had symptoms consistent with tetanus (even though tetanus is not a transmissible disease).

17

90.     Defendants could accommodate Ms. Ream, if transmissible disease is actually their concern, by simply permitting her to complete the last two days of on campus activities online, as she has done with all other course work, but they have refused that accommodation as well. Additionally, Defendants could provide Ms. Ream with the same accommodation it provides students with a medical exemption.

91.     Instead of allowing Ms. Ream to utilize any of the above less burdensome alternatives, which would allow her to maintain her religious convictions against vaccination and pursue her educational goals, Defendants insisted that she violate her religious integrity as a term and condition of receiving a public education at UC.

92.     Defendants' Policy is in sharp conflict with Ms. Ream's religious beliefs and practices.

93.     Class instruction begins for the spring semester, for the classes Ms. Ream is enrolled in, on January 10, 2024. Some instructors prohibit late additions to classes, and the enrollment drop/add deadline is January 22, 2024, after which classes cannot be added and Ms. Ream will be precluded from enrolling in the spring semester.

94.     Because of Defendants' prohibition of religious practice under the Policy, Ms. Ream is going to be forced in the next week to request Planned Educational Leave through the remainder of the semester, which will force her to skip the next term of classes. If she does not apply for the leave, she risks being unenrolled in the MBA program and may never be permitted back to complete the program. Ms. Reams' PELP application must be approved by a graduate advisor at UCD, and that must occur by January 22, 2024, or she risks disenrollment.

95.     On April 1, 2024, Ms. Ream will have to have this issue resolved, because that is the date the Planned Educational Leave must end and enrollment will occur for the next term of instruction and, if Ms. Ream is not permitted to enroll and take classes, she will be disenrolled from the program, and would be forced to reapply in the future

18

in a highly discretionary process that likely means she will never be able to complete the program.

**B.    Defendants' Policy Substantially Burdens the Free Exercise of Plaintiff's Religious Beliefs**

96.    Defendants' Policy substantially burdens Ms. Ream's religious beliefs.

97.    Ms. Ream cannot uphold her religious convictions and simultaneously satisfy Defendants' Policy in order to pursue an education at institutions controlled by Defendants.

98.    Ms. Ream is a taxpayer seeking to further her professional status and career prospects, but Defendants deny her these opportunities because of her religious beliefs.

99.    Defendants effectively waived their Policy by permitting Ms. Ream to matriculate, complete a term, and attend the first two days (of four total days) of in-person instruction. Yet, they now claim that her religious beliefs pose a health threat and barrier to continued enrollment, resulting in loss of Constitutional rights, financial losses, and extreme stress to Ms. Ream.

**C.    There are Many Less Burdensome Alternatives, and the Policy is Both Under and Over-Inclusive Relative to Defendants' Goals**

100.    Universities across the country have mandatory vaccination policies. However, the overwhelming majority of these universities have a process for both religious and medical exemptions to compulsory vaccination requirements.

101.    These universities have demonstrated their goals undergirding vaccination requirements can be satisfied while simultaneously respecting students' religious freedoms.

102.    Universities with a religious exemption process deploy a variety of tactics, such as quarantine in the event of an outbreak, or face masking, distancing, sanitation, and others – though UC does not require any of these measures for those with medical exemptions. Indeed, if vaccination is effective against transmission of disease, as UC

19

claims is the reason for the policy, then a handful of religious exemptions, particularly for online students who are on campus only a couple of days a semester, would present no risk to the remaining vaccinated students, particularly given herd immunity principles.

103.    Such less restrictive alternatives are even more apparent in Ms. Ream's case because she is an online student and the only in-person requirement that she has not met is attending one additional two-day in-person instruction session.

104.    Ms. Ream will comply with any reasonable less burdensome alternatives that would allow her to complete her online education.

105.    Moreover, the Policy also fails to regulate enough conduct to satisfy Defendants' goals. In short, the Policy is glaringly and substantially underinclusive relative to the objectives Defendants seek to achieve. For example, sporting events on Defendants' campuses, graduation ceremonies, or any other student and/or community gatherings do not require proof of vaccination. These mass gatherings pose a significantly greater risk to Defendants' goals to mitigate against infectious disease spread than would permitting Ms. Ream to pursue her online education with a process for obtaining a religious exemption.

106.    However, because of her religious objections to receiving the required vaccinations, Defendants are prohibiting Ms. Ream from not only attending a mere **two days** of in-person instruction, which need not be completed for at least year, but also from enrolling in online courses, which involve no interaction whatsoever with other students or others, and have placed a registration hold on her account.

107.    Notwithstanding the registration hold, she can, however, spend countless hours on campus visiting the library, swimming in the aquatic center, eating and shopping on campus, or attending sporting events on Defendants' campuses, just as any other member of the public can and does. As such, the Policy does not mitigate against the purported risk of transmission in the campus community, and therefore, it is severely

underinclusive. This is true, even when engaging in the fiction that all the required vaccines are capable of preventing infection and transmission of the targeted pathogens, given that several of the required vaccines are not sterilizing, and CDC and other public health authorities document breakthrough infections.

108.   The Policy is also underinclusive because it permits medical exemptions for students (both online and in-person). The Policy is underinclusive relative to Defendants' goals because it permits unvaccinated online and in-person students possessing medical exemptions to receive an education at UC.

109.   If a student with a medical exemption living on campus can safely attend in-person class every single school day of instruction, then Ms. Ream, an online MBA student, can certainly attend two days of in-person instruction with a religious exemption without endangering Defendants' goals.

110.   The Policy's substantial under-inclusivity is further magnified by the fact that UC's employees are not subjected to the Policy and because there are no vaccine requirements in nearly any other aspect of life on campus.

111.   The Policy is further substantially underinclusive because Defendants permit students to opt-out of required vaccines meant to protect from highly contagious viruses spread via respiratory secretions, which are more lethal and result in more hospitalizations every year than those required by Defendants, such as COVID-19 and influenza. Exhibit 7 (University of California – Policy on Vaccination Programs – With Interim Revisions) at 20-24.

112.   The Policy is also overbroad because it captures more conduct than necessary to achieve its goals. First, the Policy fails to include a reasonable religious exemption for the miniscule fraction of students who, like Ms. Ream, hold sincere religious beliefs in conflict with the Policy and are enrolled in an online program.

113.   Second, assuming the required vaccines provide the protection that Defendants claim, and considering that the overwhelming majority of UC's students are

compliant with the Policy, Defendants do not meaningfully advance their goals by forcing Ms. Ream to violate her held sincerely held religious beliefs by receiving the required vaccines.

114. Third, the Policy is overbroad because many of the required vaccines, including pertussis, tetanus, and diphtheria do not prevent transmission or infection of the diseases they target.[2] Rather, these vaccines merely provide a level of personal protection by preventing recipients from experiencing the symptoms of these infections, which Ms. Ream would gladly decline in favor of upholding her religious beliefs.

115. However, despite these realities, Defendants destroyed the option for religious objections, a plainly overbroad application of its justification for requiring vaccination to mitigate the spread of infectious diseases.

**COUNT I**
**42 U.S.C. § 1983**
**VIOLATION OF PLAINTIFF'S FIRST AMENDMENT FREE EXERCISE RIGHT**
**For Declaratory and Injunctive Relief**

116. Plaintiff incorporates the allegations in the foregoing paragraphs as if set forth fully herein.

117. The First Amendment of the U.S. Constitution provides that: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof."

---

[2] *See, e.g.,* https://pubmed.ncbi.nlm.nih.gov/31333640/ ("Natural infection evokes both mucosal and systemic immune responses, while aPVs [acellular pertussis vaccine, the exclusive pertussis vaccine used in the United States] induce only a systemic immune response. … Mucosal immunity is essential to prevent colonization and transmission of B. pertussis organisms. Consequently, preventive measures such as aPVs that do not induce a valid mucosal response can prevent disease but cannot avoid infection and transmission. … aPV pertussis vaccines do not prevent colonization. Consequently, they do not reduce the circulation of B. pertussis and do not exert any herd immunity effect."); https://www.cdc.gov/vaccines/pubs/pinkbook/tetanus.html ("Tetanus is not contagious from person to person."); https://pubmed.ncbi.nlm.nih.gov/5026197/ (Diphtheria vaccine only creates antibodies to a toxin released by the diphtheria bacteria and does not generate any antibodies to the diphtheria bacteria itself, hence "Diphtheria toxoid helps prevent symptomatic disease but does not prevent the carrier state nor stop the spread of infection.").

22

118.    The Supreme Court recently reaffirmed that the First Amendment's Free Exercise Clause "does perhaps its most important work by protecting the ability of those who hold religious beliefs of all kinds to live out their faiths in daily life through 'the performance of (or abstention from) physical acts.'" *Kennedy v. Bremerton Sch. Dist.*, 142 S.Ct. 2407, 2421 (2022) (*quoting Employment Div.* v. *Smith*, 494 U. S. at 877).

119.    The Supreme Court has repeatedly recognized that "[t]he free exercise of religion means, first and foremost, the right to believe and profess whatever religious doctrine one desires." *Smith*, 494 U.S. 872 at 877.

120.    "In applying the Free Exercise Clause, courts may not inquire into the truth, validity, or reasonableness of a claimant's religious beliefs." *Hobbie v. Unemployment Appeals Comm'n*, 480 U.S. 136, 144, n.9 (1987).

121.    The "guarantee of free exercise is not limited to beliefs which are shared by all of the members of a religious sect." *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 715-16 (1981).

122.    "Courts are not arbiters of scriptural interpretation," *Id.,* and should not inquire into the validity or plausibility of a person's beliefs; instead, the task is to determine whether "the beliefs professed [] are sincerely held and whether they are, in [a believer's] own scheme of things, religious." *United States v. Seeger*, 380 U.S. 163, 185 (1965).

123.    Defendants' actions threaten Ms. Ream's ability to "live out [her] faith[] in daily life" by forcing her to compromise her strongly held religious objections to vaccination while permitting secular exemptions to these same requirements. *Kennedy*, 142 S. Ct. at 2421 (quoting *Smith*, 494 U.S. at 877).

124.    While the right of free exercise does not relieve citizens of their obligations to comply with a valid and neutral law of general applicability, "[t]he Free Exercise Clause commits government itself to religious tolerance," and a law that is not neutral or generally applicable "must be justified by a compelling governmental interest and

1  must be narrowly tailored to advance that interest." *Church of Lukumi,* 508 U.S. at 531-
2  32.

3        125.    Strict scrutiny review is triggered if the law in question either is not
4  generally applicable, or if it lacks neutrality. *See, e.g., Fulton,* 141 S. Ct. 1868, 1877
5  (lack of general applicability alone triggered strict scrutiny review); *Masterpiece*
6  *Cakeshop*, 138 S.Ct. at 1729 (non-neutrality alone invoked strict scrutiny).

7        126.    The Policy fails both the general applicability and neutrality tests.

8        127.    The Policy is not narrowly tailored, is overinclusive, and substantially
9  underinclusive.

10       128.    The Policy fails strict scrutiny and, at least applied to online students such
11 as Ms. Ream, would fail even rational basis review.

12       129.    Therefore, as applied specifically to Ms. Ream, the Policy violates Ms.
13 Ream's right to free exercise of religion.

## INJUNCTIVE RELIEF ALLEGATIONS

15       130.    Plaintiff incorporates the allegations in the foregoing paragraphs as if set
16 forth fully herein.

17       131.    Plaintiff alleges that as applied specifically to her situation, the Policy
18 violates her First Amendment rights and her right to be free from unconstitutional
19 government actions.

20       132.    Plaintiff is being and will continue to be irreparably harmed unless this
21 Court enjoins Defendants from enforcing the Policy against her without providing the
22 option for a religious exemption process.

23       133.    Plaintiff has no plain, speedy, and adequate remedy at law to prevent
24 Defendants from enforcing the Policy against her.

25       134.    If not enjoined by this Court, Defendants will continue to implement and
26 enforce the Policy in violation of Plaintiff's constitutional rights.

27

28

135.   Moreover, without a preliminary injunction preserving the status quo, Ms. Ream will suffer an impending loss of education and of her professional prospects. nd in any event, the facts and law clearly favor the Plaintiff.

136.   The status quo that proceeded this controversy was that Plaintiff enrolled and matriculated in UCD's online MBA classes and attended one of the two required two-day in-person instructions. Ms. Ream is currently an enrolled student at UCD.

137.   Accordingly, the Court must apply the prohibitory injunction standard.

138.   The laws and facts are clearly in Ms. Ream's favor. Without an injunction, Ms. Ream, a taxpayer, and citizen of California, will be forever deprived of pursuing an online education at UC, a public institution. This amounts to extreme harm wherein compensation for damages is inadequate to cure the harm.

139.   Ms. Ream's injuries—past, ongoing, and imminent—cannot be remedied by a later-issued court order.

140.   The remaining injunction factors—the balance of harms and public interest—merge where there is a loss of constitutional rights. *See Tandon*, 141 S. Ct. at 1297; *Nken v. Holder*, 556 U.S. 418, 435 (2009).

141.   Accordingly, considering the foregoing, injunctive relief is appropriate.

## **DECLARATORY RELIEF ALLEGATIONS**

142.   Plaintiff incorporates the allegations in the foregoing paragraphs as if set forth fully herein.

143.   Plaintiff is entitled to a declaratory judgment pursuant to 28 U.S.C. § 2201. An actual and substantial controversy exists between Plaintiff and Defendants as to her legal rights and duties with respect to whether the Policy—which allows for secular but not religious exemptions—and therefore violates the United States Constitution.

144.   The case is presently justiciable because the Policy and absence of any religious exemption to the same applies to Plaintiff, who is currently harmed by being excluded from continuing in UCD's online MBA program.

145.    Declaratory relief is therefore appropriate to resolve this controversy.

**PRAYER FOR RELIEF**

146.    Pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, it is appropriate and proper that a declaratory judgment be issued by this Court, declaring that the Policy is unconstitutional as applied to Plaintiff.

147.    Pursuant to 28 U.S.C. § 2202 and Fed. R. Civ. P. 65, it is appropriate and hereby requested that the Court issue a temporary restraining order permitting Plaintiff to enroll in online classes for the spring 2024 semester, as well as preliminary and permanent injunction prohibiting Defendants from enforcing the Policy against Plaintiff without providing the option for a religious exemption.

148.    WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Defendants and provide Plaintiff with the following relief:

a)    Declare the "no religious accommodation" policy, as applied specifically to Ms. Ream, unconstitutional;

b)    Issue a temporary restraining order permitting Plaintiff to enroll in online classes for the spring 2024 semester;

c)    Preliminarily and permanently enjoin Defendants their agents, servants, employees and any other persons acting on their behalf from implementing and enforcing the Policy against Ms. Ream without providing the option for a religious exemption;

d)    Grant Plaintiff her costs and attorneys' fees under 42 U.S.C. § 1988, and any other applicable authority; and

e)    For such and other relief as this Court deems just and proper.

Dated: January 8, 2024                    Respectfully submitted by,

                                          SIRI & GLIMSTAD LLP

                                          By: */s/ Catherine E. Ybarra*

26

Catherine Ybarra (SBN 283360)
Email: cybarra@sirillp.com
700 S. Flower Street, Suite 1000
Los Angeles, CA 90017
Telephone 213-376-3739
Facsimile 646-417-5967

Allison R. Lucas (*pro hac vice filed concurrently*)
Email: alucas@sirillp.com
220 West Congress Street, 2nd Floor
Detroit, MI 48226
Telephone 313-251-9161
Facsimile 646-417-5967

Elizabeth A. Brehm (*pro hac vice filed concurrently*)
Email: ebrehm@sirillp.com
745 Fifth Avenue, Suite 500
New York, NY 10151
Telephone 212-532-1091
Facsimile 646-417-5967

Attorneys for Plaintiff
BARBARANN REAM

27

## **<u>VERIFICATION</u>**

I, Barbarann Ream, a citizen of the United States and of the state of California, have read the foregoing Verified Compliant and know the contents thereof as to myself and that the same is true to my own knowledge and as to all other matters on information and belief and I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Executed on ___01 / 08 / 2024___ in Los Angeles, California.

_____
Barbarann Ream